**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

CRAIG HARRISON, ALEX ROSS, CODY CARTER, GREG WHALEN, JOHN HALM, LEVI MILLS, MANUEL CAMACHO, RUSSELL KOTA, TREVOR PALMER, TREVOR TULL, TYLER TEMPLETON, ALEXANDER MADDEN, DANIEL BOSSERT, DUSTIN GARNER, JENNIFER CASEY, STUART EPTING, and WILLIE HANKS,

                Plaintiffs,

    v.

3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company; AGC CHEMICALS AMERICAS INC.; AMEREX CORPORATION; ARCHROMA U.S. INC.; ARKEMA, INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CHEMICALS, INC.; CHEMOURS COMPANY FC, LLC; CHUBB FIRE, LTD; CLARIANT CORP.; CORTEVA, INC.; DAIKIN AMERICA, INC.; DEEPWATER CHEMICALS, INC.; DU PONT DE NEMOURS INC. (f/k/a DOWDUPONT INC.); DYNAX CORPORATION; E.I. DU PONT DE NEMOURS AND COMPANY; JOHNSON CONTROLS, INC.; KIDDE PLC; NATION FORD CHEMICAL COMPANY; NATIONAL FOAM, INC.; PERIMETER SOLUTIONS, LP; THE CHEMOURS COMPANY; TYCO FIRE PRODUCTS LP, as successor-in-interest to The Ansul Company; UNITED TECHNOLOGIES CORPORATION; UTC FIRE & SECURITY AMERICAS CORPORATION, INC. (f/k/a GE Interlogix, Inc.); ALLSTAR FIRE EQUIPMENT; CB GARMENT, INC.; FIRE-DEX, LLC; FIRE SERVICE PLUS, INC.; GLOBE MANUFACTURING COMPANY LLC; HONEYWELL SAFETY PRODUCT USA, INC.; INNOTEX CORP.; L.N. CURTIS & SONS; LION GROUP, INC.; MILLIKEN & COMPANY; MINE RESPIRATOR COMPANY LLC f/k/a MINE

Case No. 3:25-CV-01203

**AMENDED NOTICE OF REMOVAL**

**JURY TRIAL DEMANDED**

1

SAFETY APPLIANCES CO., LLC; MUNICIPAL
EMERGENCY SERVICES, INC.; PBI
PERFORMANCE PRODUCTS, INC.; RICOCHET
MANUFACTURING CO., INC; SAFETY
COMPONENTS FABRIC TECHNOLOGIES, INC;
SOUTHERN MILLS, INC. d/b/a TENCATE
PROTECTIVE FABRICS; SPRINGFIELD LLC;
STEDFFAST USA, INC.; VERIDIAN LIMITED;
W.L. GORE & ASSOCIATES INC.; WITMER
PUBLIC SAFETY GROUP,

Defendants.

Defendant 3M Company ("3M"), by and through undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, to the United States District Court for the Southern District of Illinois. 3M entitled to remove this action based on federal officer jurisdiction. As grounds for removal, 3M states as follows.

## PRELIMINARY STATEMENT

1.      Plaintiffs seek to hold 3M and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and/or selling aqueous film-forming foams ("AFFF") and/or firefighter turnout gear ("TOG") that Plaintiffs allege were used in firefighting activities, thereby causing injury to Plaintiffs.

2.      In relevant part, Plaintiffs allege that 3M and certain other Defendants sold AFFF containing per- and polyfluoroalkyl substances ("PFAS"), including perfluoro-octanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). (*E.g.*, Compl. ¶¶ 1, 182-292.) Moreover, each Plaintiff expressly alleges that he "regularly used, and was thereby directly exposed to, AFFF . . . in training and to extinguish fires during his working career as a military and/or civilian

2

firefighter" and allegedly suffered injury "as a result of exposure to Defendants' AFFF or TOG products" (*e.g.*, *id.*, ¶¶ 12-181; *see also, e.g.*, *id.* ¶ 7 ("Plaintiffs' consumption, inhalation and/or dermal absorption of PFAS from Defendant's (sic) AFFF or TOG products caused Plaintiffs to develop the serious medical conditions and complications alleged herein")).

3.    AFFF sold to and used by the U.S. military must appear on the Department of Defense ("DoD") Qualified Products List and comply with the military's rigorous specifications ("MilSpec").  Thus, to the extent that Plaintiffs allegedly were exposed in military settings to PFAS from AFFF manufactured by 3M, those PFAS derived from MilSpec AFFF.  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008)

## BACKGROUND

4.    This action was filed on May 1, 2025, in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, bearing Case No. 2025LA000545. (Ex. A, Complaint.) Venue is proper in this Court pursuant to 28 U.S.C. §§ 93(c) and 1441(a) because the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, is located within the Southern District of Illinois.

5.    3M was served with the complaint on May 16, 2025.  Removal is timely pursuant to 28 U.S.C. § 1446(b).

6.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7.     Plaintiffs generally allege that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold AFFF products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors, and allege that other Defendants have designed, manufactured, marketed, distributed, and/or sold TOG products and/or fluorinated surfactants used therein, which contain PFAS, including PFOS, PFOA, and/or their precursors.  (*E.g.*, Compl. ¶¶ 4, 46-149, 151-53, 157-58, 197-200, 202.) Each of the Plaintiffs expressly alleges that they "regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter" and suffered injury "as a result of exposure to Defendants' AFFF or TOG products" (*e.g.*, *id.* ¶¶ 12-45). Plaintiffs also allege that their "consumption, inhalation and/or dermal absorption of PFAS from Defendant's (sic) AFFF or TOG products caused Plaintiffs to develop the serious medical conditions and complications alleged herein" (*id.* ¶ 7).

8.     Plaintiffs assert claims against all Defendants, including 3M, for negligence (*id.* ¶¶ 221-25), battery (*id.* ¶¶ 226-38), inadequate warning (*id.* ¶¶ 239-45), negligent design (*id.* ¶¶ 246-55), strict liability (statutory) (*id.* ¶¶ 256-63), strict liability (Restatement) (*id.* ¶¶ 264-74), fraudulent concealment (*id.* ¶¶ 275-83), breach of express and implied warranties (*id.* ¶¶ 284-90), and wantonness (*id.* ¶¶ 291-96).  Plaintiffs assert claims against the "DuPont Defendants" for fraudulent transfer (*id.* ¶¶ 297-316).

9.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action, and a copy is being filed with the Clerk of the Circuit Court of the Third Judicial Circuit, Madison County, Illinois.

10.     By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

11.     3M reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

12.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action for or relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that it is a "(1) 'person' (2) 'acting under' the United States, its agencies, or its offers (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim." *Ruppel*, 701 F.3d at 1180-81 (quoting 28 U.S.C. § 1442(a)); *accord Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020); *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

13.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423,

431 (1999). This is because the "basic purpose of § 1442(a)(1) is to ensure a federal forum for defenses of official immunity by federal officers." *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1004 (N.D. Ill. 2007). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construed" in favor of removal. *Hammer v. U.S. Dep't of Health & Hum. Servs.*, 905 F.3d 517, 527 (7th Cir. 2018) (quoting *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007)). To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construed" in favor of removal. *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007).

14.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at \*3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that plaintiff's injuries have been caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at \*2–3 (D.S.C. May 24, 2019) ("*AFFF I*"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("*AFFF II*"), at 3–5; Order, *In re AFFF Prods.*

*Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("*AFFF III*"), at 3–6. Especially given its experience with the claims and defenses in the AFFF litigation, the MDL Court's holdings show that this case, too, has been properly removed to federal court.[1]

### A.  MilSpec AFFF

15.    Since the late 1960s/early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted the first AFFF patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

16.    The design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the DOD. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[5] Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance with

---

[1] Following removal, 3M intends to designate this action for transfer to the MDL.

[2] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., *The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power*, at 37 (June 30, 2006) ("*Fulfilling the Roosevelts' Vision*"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] MIL-PRF-24385F(4) § 3.1 (2020).

specification requirements."[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[7] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[9]

17.     From its inception until 2019, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their precursors—among the compounds expressly alleged to be at issue in the Complaint here.[10] The current MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[11] Indeed, the current MilSpec recognizes that it is not yet technically feasible for

---

[6] DOD, SD-6, Provisions Governing Qualification at 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[7] *See, e.g.*, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* DOD SD-6, *supra* note 6, at 3.)

[8] DOD, SD-6, *supra* note 6, at 1.

[9] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[10] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[11] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

manufacturers to completely eliminate PFOA and PFOS from AFFF "while still meeting all other military specification requirements."[12]

**B.     All of the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

*1.     The "Person" Requirement Is Satisfied.*

18.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M, a corporation, is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Betzner*, 910 F.3d at 1015("Corporations are persons under § 1442(a).").

*2.     The "Acting Under" Requirement Is Satisfied.*

19.     The second requirement, ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ."  *Isaacson*, 517 F.3d at 136 (citation omitted).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency."  *Papp*, 842 F.3d at 813.

20.     The requirement of "acting under" federal office is met here because Plaintiffs' claims, at least in part, challenge 3M's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself."  *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.  *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "lifesaving product"

---

[12] *Id.* § 6.6.

used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations" and that 3M "contributed considerably to the success of the development of AFFF."[13]  Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3-6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3-5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3-6 (same).  If 3M and other manufacturers did not provide MilSpec AFFF for use at military bases, the government would have to manufacture and supply the product itself.

21.     In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers.  Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[14]

---

[13] Fulfilling the Roosevelts' Vision, *supra* n.2, at 37.

[14] *See* Dep't of Defense, SD-6, *supra* n.4, at 1.

### 3. The "Under Color Of Federal Office" Requirement Is Satisfied.

22.     The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[15]  It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Papp*, 842 F.3d at 813; *see also Isaacson*, 517 F.3d at 137-38 (explaining that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties).

23.     Here, Plaintiffs' claims arise at least in part from 3M's production and sale of AFFF manufactured to military specifications for use at military facilities.  Plaintiffs allege that the use of PFAS in AFFF is the source of their injuries.  3M contends that the use of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by 3M and other manufacturers to meet specifications established by the DoD. Military installations are required to employ MilSpec AFFF.  The design choices Plaintiffs are attempting to impose via state tort law would create a conflict in which 3M could not comply with both the MilSpec and the purported state-prescribed duty of care.  *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,

---

[15] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

at 5-6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims [the defendant] manufactured and sold, and for which the U.S. military imposes MilSpec standards.  The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (nexus element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5-6 (same).

24.    Here, Plaintiffs' purported injuries arise at least in part from MilSpec AFFF.  The causal connection between Plaintiffs' alleged injuries and 3M's actions under color of federal office thus is clear.  It is irrelevant that Plaintiffs do not expressly contend that they have been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### *4.    The "Colorable Federal Defense" Requirement Is Satisfied.*

25.    The fourth requirement, a "colorable federal defense," is satisfied by 3M's assertion of the government contractor defense.

26.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."

12

*Cuomo*, 771 F.3d at 116.[16]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

27.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

28.     3M has satisfied these elements for purposes of removal.  The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989).  Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.  Those specifications are "reasonably precise," including in requiring the

---

[16] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

use of PFAS. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

29.     With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[17] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF Prod. Liab. Litig.*, 2019 WL 2807266, at *3  (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

30.     Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise

---

[17] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

environmental or human health issues.[18] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[19] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[20] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[21] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present

---

[18] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002) (excerpt).

[19] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[20] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[21] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

(subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[22] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ").

31.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

32.     3M's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole

---

[22] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

33.    In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

* * * * *

WHEREFORE, 3M hereby removes this action from Circuit Court of the Third Judicial Circuit, Madison County, Illinois, to this Court.


                                        Respectfully submitted,

Dated: June 9, 2025                     */s/ Daniel I. Rottenberg*
                                        Daniel I. Rottenberg
                                        Mayer Brown LLP
                                        71 South Wacker Drive
                                        Chicago, Illinois 60606
                                        (312) 782-0600
                                        drottenberg@mayerbrown.com

                                        *Counsel for Defendant 3M Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2025, I caused a true and correct copy of the foregoing document, with its exhibits, to be served upon the following parties by First Class Mail and/or Email, as indicated below:

<u>By Email and Mail</u>:

Steven D. Davis, II
Eric W. Cracken
TorHoerman Law LLC
210 S. Main Street
Edwardsville, IL 62025
sdavis@thlawyer.com
ecracken@thlawyer.com

*Counsel for Plaintiffs*

<u>By Mail:</u>

AGC CHEMICALS AMERICAS, INC.
55 East Uwchlan Avenue, Ste. 201
Exton, PA 19341

ALLSTAR FIRE EQUIPMENT
12328 Lower Azusa Road
Arcadia, CA 91006

AMEREX CORPORATION
7595 Gadsden Hwy.
Trussville, AL 35173

ARCHROMA U.S., INC.
5435 77 Center Drive, #10
Charlotte, NC 28217

ARKEMA INC.
900 First Avenue
King of Prussia, PA 19406

BASF CORPORATION
100 Park Avenue
Florham Park, NJ 07932

BUCKEYE FIRE EQUIPMENT COMPANY
110 Kings Road
Kings Mountain, North Carolina 28086

CARRIER GLOBAL CORPORATION
13995 Pasteur Boulevard
Palm Beach Gardens, FL 33418

CB GARMENT, INC.
830 Wilson Street
Eugene, OR 97402

CHEMDESIGN PRODUCTS, INC.
2 Stanton Street
Marinette, WI 54143

CHEMGUARD, INC.
One Stanton Street
Marinette, WI 54143

CHEMICALS, INC.
12321 Hatcherville Road
Baytown, TX 77521

CHEMOURS COMPANY FC, LLC
1007 Market Street
Wilmington, DE 19899

CHUBB FIRE, LTD.
Littleton Road
Ashford, Middlesex, United Kingdom TW15 1TZ

CLARIANT CORPORATION
500 East Morehead Street, Suite 400
Charlotte, NC 28202

CORTEVA, INC.
Chestnut Run Plaza 735
Wilmington, DE 19805

DAIKIN AMERICA, INC.
20 Olympic Drive
Orangeburg, NY 10962

DEEPWATER CHEMICALS, INC.
196122 E. County Road 735

Woodward, OK 73801

DUPONT DE NEMOURS, INC. (f/k/a DOWDUPONT INC.)
1007 Market Street
Wilmington, DE 19899

DYNAX CORP.
103 Fairview Park Dr.
Elmsford, NY 10523-1544

E.I. DUPONT DE NEMOURS AND COMPANY
1007 Market Street
Wilmington, DE 19899

FIRE-DEX, LLC
780 South Progress Drive
Medina, OH 44256

FIRE SERVICE PLUS, INC.
5446 Katherine Street
Simi Valley, CA 93063

GLOBE MANUFACTURING COMPANY LLC
37 Loudon Road
Pittsfield, NH 03263

HONEYWELL SAFETY PRODUCTS USA, INC.
300 South Tryon Street Suite 500
Charlotte, NC 28202

INNOTEX CORP.
2397 Harts Ferry Road
Ohatchee, AL 36271

JOHNSON CONTROLS, INC.
5757 North Green Bay Ave.
Milwaukee, WI 53209

KIDDE PLC, INC.
One Carrier Place
Farmington, CT 06034

LION GROUP, INC.
7200 Poe Ave. Suite 400
Dayton, OH 45414

L.N. CURTIS
185 Lennon Lane, Suite 110
Walnut Creek, CA 94598

MILLIKEN & COMPANY
920 Milliken Road, Spartanburg, SC 29303

MINE RESPIRATOR COMPANY, LLC (f/k/a MINE SAFETY APPLIANCES CO., LLC)
1000 Cranberry Woods Drive
Cranberry Twp., PA 16066

MUNICIPAL EMERGENCY SERVICES, INC.
12 Turnberry Lane
Sandy Hook, CT 06482

NATION FORD CHEMICAL COMPANY
2300 Banks Street
Fort Mill, SC 29715

NATIONAL FOAM, INC.
141 Junny Road
Angier, NC 27501

PBI PERFORMANCE PRODUCTS, INC.
9800-D Southern Pine Boulevard
Charlotte, NC 28273

PERIMETER SOLUTIONS, LP
10677 Jersey Blvd
Rancho Cucamonga, CA 91730

RICOCHET MANUFACTURING CO, INC.
4700 Wissahickon Ave., Ste. 112
Philadelphia, PA 19114

SAFETY COMPONENTS FABRIC TECHNOLOGIES, INC.
40 Emery Street
Greenville, SC 29605

SOUTHERN MILLS, INC. (f/k/a TenCate Protective Fabrics)
6501 Mall Boulevard
Union City, GA 30291

STEDFAST USA, INC.
800 Mountain View Drive
Piney Flats, TN 37686

THE CHEMOURS COMPANY
1007 Market Street
Wilmington, DE 19898

TYCO FIRE PRODUCTS LP
1400 Pennbrook Parkway
Lansdale, PA 19466

UNITED TECHNOLOGIES CORPORATION
8 Farm Springs Road
Farmington, CT 06032

UTC FIRE & SECURITY AMERICAS CORPORATION, INC.
3211 Progress Drive
Lincolnton, NC 28092

VERIDIAN LIMITED
3710 West Milwaukee Street
Spencer, IA 51301

W.L. GORE & ASSOCIATES, INC.
1901 Barksdale Road
Newark, DE 19711

WITMER PUBLIC SAFETY GROUP, INC.
104 Independence Way
Coatesville, PA 19320

*Defendants.*

*/s/ Daniel I. Rottenberg*